## PALMER v. LEFFLER *et al.*

1. **Usury: STATUTES.** The usury law of 1843 was repealed by the Code of 1851, after which there was no law in force in this State regulating the rates of interest on money until the enactment of the law of 1853; and a contract for interest at twenty-four per cent per annum upon money loaned, made in 1852, without the practice of any fraud or the exercise of any undue influence by the creditor, was not in contravention of any law of the State *then* in force, and must be enforced by the courts.

*Appeal from Des Moines District Court.*

THURSDAY, DECEMBER 22.

NOVEMBER 1st, 1850, Leffler borrowed of the plaintiff $670, and executed two notes, one for $396.80, due in one

year, and one for $492.03, due in two years, with ten per cent interest after maturity, and secured them by a deed of trust. On the 8th day of March, 1852, defendant applied to the plaintiff to borrow an additional sum to procure an outfit to California, alleging that he was doing nothing here, and would not be able to pay plaintiff unless he went. Plaintiff endeavored to dissuade him from going, and after much hesitation finally consented to loan him $300 more, and received his note and trust-deed for that amount, *with interest at two per cent per month* from date till paid. Of this amount the plaintiff applied $80 on the first note above described, and extended the time of payment (it being then due) to November 1st, 1852, the time when the second note above described would mature. As the defendant intended to go to California, he wished an extension of the time of payment of the two notes first mentioned, beyond the 1st day of November, 1852, and as part of the same transaction in which he borrowed the $300, agreed to pay the plaintiff two per cent per month on those notes if they were not paid when due, provided the plaintiff would extend the time. An indorsement upon the notes was made as follows: "March 8th, 1852. In consideration of forbearance and extension in time of payment of the within note, I agree, in case this note is not paid Nov. 1st, 1852, to pay interest on the same after that date at the rate of two per cent per month. John N. Leffler." Defendant went to California, and did not return till 1857, and meanwhile the plaintiff, in consideration of the defendant's promise to pay him interest as above, did forbear and extend the time of payment. The plaintiff filed his petition to foreclose his trust-deed, and for an account of the amount due him. The court rendered a decree in favor of the plaintiff for $3,265.85, of which $2,102.78 was declared to be a lien, and the rest not.

Both parties appeal.

*Chas. H. Phelps* for the plaintiff.

*J. C. & B. J. Hall* for the defendant.

DILLON, J. — The defendant claims that the decree below against him was for too large an amount, and this is the only question which he makes on his appeal. As the two notes of November 1st, 1850, were executed under the usury law of 1843, and a greater rate of interest contracted for than was authorized by law, they were usurious. The court below so found, and eliminated the usurious excess in ascertaining the amount of the plaintiff's recovery. So far, the defendant does not complain; and we may remark, in passing, that the plaintiff's complaint of the action of the court, in this regard, does not seem to be well founded. On the 8th day of March, 1852, when the note for $300 was executed, and the written agreement was made to pay two per cent per month interest on the others, in consideration of an extension of time beyond November 1st, 1852, *there was no usury law* in force in the State of Iowa. The law, as contained in the Code of 1851, was then in operation. The Legislature, in 1851, repealed all usury laws existing prior to that time, and determining upon a change of policy, with a view, as it was argued, of attracting thither the surplus capital of the East, most unwisely, as the event proved, substituted no other laws on this subject in the place of those repealed. The theory that men should be allowed perfect freedom to regulate, by their own contracts, the rate which the borrower should pay and the lender receive for the use of money, seemed plausible; but it overlooked the experience of ages on this subject. The power of the one is so controlling, the necessities of the other are so great, that an enlightened public policy requires, that some reasonable rate, for the use of money, should be fixed by legislative enactment. In 1853 this was seen, and the legislature then

*1. USURY: statutes.*

enacted the usury law which is, at present, in force. Prior to this time, however, and during the period when there existed no statutory prohibition, and when the legislature intended that none should exist, against taking greater than a specified rate of interest, the contract of the defendant to pay interest at the rate of twenty-four per cent per annum was made.

This high and unreasonable rate of interest, the defendant maintains, should not be allowed to the plaintiff; but should be treated, at least by a court of equity, to which the plaintiff has resorted, as a penalty, and he should be allowed only the declared legal rate, in the absence of specific contract — that is, six, or, at most, ten per cent interest. This would entirely accord with our inclination, if we could do so without violating the law which it is our duty to uphold and enforce. The defendant offered no testimony showing that the plaintiff used his position as a creditor, to oppress the defendant, or extort the agreement from him. On the contrary, the evidence shows that it was made at the special and earnest solicitation of the defendant, and after the plaintiff had endeavored to dissuade him from it. The defendant argues that the agreement is intrinsically fraudulent; that, in the language of Lord HARDWICKE, in *Chesterfield* v. *Jansen*, 2 Ves., 155, it is, upon its face, "such as no man in his senses, and not under delusion, would make on the one hand, and no honest and fair man would accept on the other." Where the proof affirmatively shows, as it does in this case, that the plaintiff did not use his position and power to obtain an unjust advantage of the defendant, the case is not one for the application of this rule.

From 1850 to 1857, there was not, probably, one loan in twenty made in Iowa, where the rate did not reach or exceed twenty per cent per annum. Money was in great demand; property was rapidly advancing, often doubling

in value in a single year. Many large fortunes were made, in this State, on a borrowed capital, at these apparently high rates, and many thus made were lost, after the financial revulsion of 1857, when the borrowers were unfortunate enough to remain debtors. In view of the past history of Iowa, in this regard, we would not like to put ourselves in the position of judicially determining that, in 1852, no man, in his senses, would agree to pay, and no honest and fair man agree to receive, interest at the rate of twenty-four per cent *per annum*. The legislature declared that it was not good policy to have any usury laws; the defendant's counsel asks us to reverse this determination, to correct the error, and, judicially, to make a law of this character, to fill up the *hiatus* between the repeal of the law of 1843 and the enactment of that of 1853. This the courts cannot do; and in any view of the case which has been presented, the decree of the District Court must be

Affirmed.